IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VIRGIL TREECE, | ) Civil Action No. 3:10-2354-DCN-JRM |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| | ) **AND** |
| SHELLY WINSTON-WOOD; | ) **REPORT AND RECOMMENDATION** |
| P.S.O. GAITHER; AND | ) |
| S.O. RON WHITEHOOD, | ) |
| Defendants. | ) |

Plaintiff filed this action, pro se, on September 14, 2010. He is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act, S.C. Code Ann. §§ 44-48-10 through 44-48-170. Defendants, all employees of the SCDMH, are Sheri Winston-Woods ("Winston-Woods"),[1] PSO Gaither ("Gaither"), and S/O Steven Whitehead[2] ("Whitehead").[3] Plaintiff appears to allege, pursuant to 42 U.S.C. § 1983 ("§ 1983"),[4] that his constitutional rights were violated. He also appears to allege claims under the Americans with Disabilities Act ("ADA"); the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §§ 1997-1997j; and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104–191, 110 Stat.1936.

---

[1] Plaintiff appears to have misidentified this Defendant as "Shelly Winston-Wood."

[2] Plaintiff appears to have misidentified this Defendant as "S/O Ron Whitehood."

[3] Defendant SCDMH was dismissed without prejudice on December 9, 2010. See Doc. 11.

[4] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(e) DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.



On August 27, 2011, Defendants filed a motion for summary judgment.  Because Plaintiff is proceeding pro se, he was advised on August 28, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Defendants filed a supplemental affidavit from Defendant Gaither on June 29, 2011.  Doc. 43.  Plaintiff filed a response on July 28, 2011, and Defendants filed a reply on August 5, 2011.

## **MOTION TO AMEND**

On August 15, 2011, Plaintiff filed a motion to amend his previous response to Defendants' motion for summary judgment.  He also is attempting to submit notarized versions of affidavits from other inmates he submitted with his original response, plus additional affidavits.  Defendants oppose the motion to the extent that Plaintiff is attempting to file a sur-reply to Defendants' reply as the Local Rules (see Local Civil Rule 7.07 DSC) do not provide for the allowance of sur-replies and because Defendants did not raise any new issues in their reply which would require a sur-reply.  They argue that the sur-reply contains unsupported conclusory allegations of wrongdoing by Defendants, and contains unsubstantiated and unnecessary attacks on Defendants and their counsel.  Defendants also argue that the allegations within Plaintiff's sur-reply do not establish that the actions of Defendants violated any right of Plaintiff under federal law.  They do not, however, oppose the substitution of the un-notarized affidavits attached to Plaintiff's response with notarized copies of those affidavits.    Plaintiff appears to argue that he was unable to provide notarized affidavits because no notary was available to him.  **Plaintiff's motion to amend his previous response is granted.**



**STANDARD FOR SUMMARY JUDGMENT**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).

**DISCUSSION**

Plaintiff alleges that Defendants, in searching his room on July 27, 2010, "thrashed" his cell by tossing his clothing, bedding, mattress, books, and personal items on the floor; walking over his

3



belongings; and refusing to help him (he states he is handicapped) place his mattress back in place. He alleges that, as a result of Defendants' actions, he suffered physical and mental stress contributing to or causing him high blood pressure, an irregular heart beat, and hospitalization. Plaintiff claims that approximately thirty days prior to the alleged incident he filed two complaints[5] against Defendant Gaither claiming that Gaither failed to bring keys to Plaintiff's body restraints while on a medical transport such that the restraints could not be removed while Plaintiff received x-rays; Gaither exceeded the speed of 80 miles per hour while texting and using his cell phone; and Gaither refused "to not watch[] Plaintiff while using the bathroom & providing a urine sample to Plaintiff's doctor." Complaint at 3. Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to Eleventh Amendment immunity; (2) they are entitled to qualified immunity; (3) Plaintiff fails to show that his due process rights were violated; (4) Plaintiff fails to show that his equal protection rights were violated; (5) Plaintiff fails to show that Defendants retaliated against him; (6) Plaintiff fails to show that his rights were violated under the ADA; (7) Plaintiff fails to show that he has a private cause of action under CRIPA ; (8) Plaintiff fails to state a claim under HIPAA and he fails to show that he has a private right of action under HIPAA; (9) Plaintiff fails to show that his constitutional rights were violated as to any deprivation of personal property; and (10) Plaintiff fails to show that he suffered any physical or emotional injury from the alleged actions.

    A.    <u>Due Process</u>

Plaintiff appears to allege that the search and thrashing of his room violated his due process rights of the Fourteenth Amendment. Defendants contend that the searches conducted to

---

[5]Plaintiff has not provided any copies of these complaints.

4



ensure that residents are not in possession of contraband are necessary to maintain safety and order within the facility (including limiting some personal items that would interfere with residents' treatment). In support of his claim, Plaintiff has presented an affidavit from another SVPTP resident, Danny Dispenza, who states that he has "never seen or heard of any other residents at this unit having their assigned cell thrashed during a cell search like Plaintiff complains of [sic]." Dispenza Aff. SVPTP resident James Gibson states that he "did personally inspect" Plaintiff's cell after the alleged incident in which the cell "appeared to have been trashed, whereby that there w[ere] papers, cloth[e]s and matter thrown on the floor." He also claims that Plaintiff "appeared to be shaken, upset, and in physical pain when he attempted to pick up a mattress but was unable to at that time."[6] Defendants deny Plaintiff's claims that their search was anything out of the routine, that they harmed any of Plaintiff's property, or that Plaintiff was harmed by the search. They argue that room searches are necessary for safety and to make sure that SVPTP residents do not have contraband that is not allowed under their treatment plan. Defendants argue that Plaintiff fails to establish a violation of his due process rights because he has not shown that he has a protected liberty or property interest.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. <u>Youngberg v. Romeo</u>, 457

---

[6]Plaintiff produced another affidavit from Gibson detailing a search of Gibson's room on July 25, 2011. There is no indication that this affidavit is relevant to the search of Plaintiff's room the previous year. Further, to the extent that Plaintiff is attempting to assert claims on behalf of other SVPTP residents, his claims fail. <u>See</u> <u>Laird</u> <u>v. Tatum</u>, 408 U.S. 1 (1972; <u>see also</u> <u>Valley Forge Christian College v. Americans United for Separation of Church & State</u>, 454 U.S. 464, 482 (1982); <u>Flast</u> <u>v. Cohen</u>, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); <u>Lake Carriers Ass'n v. MacMullan</u>, 406 U.S. 498, 506 (1972); and <u>Hummer v. Dalton</u>, 657 F.2d 621, 625-626 (4th Cir. 1981 )(a prisoner cannot act as a "knight-errant" for others). <u>Cf.</u> <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a <u>pro</u> <u>se</u> prisoner cannot be an advocate for others in a class action).



U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed. See Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, supra.

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. Youngberg, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. Id. at 322.

Winston-Woods states that searches of the SVP residents' rooms are necessary to ensure the safety and security of the unit and institution as well as the residents and employees of the SVPTP, SVPTP residents are housed within the perimeter of a maximum security level correctional institution (Broad River Correctional Institution of the South Carolina Department of Corrections) such that there are further security concerns, random searches are necessary to ensure that residents are not in possession of contraband, some personal items are limited because they would interfere with the residents' treatments, and there are limitations as to residents' possessions due to space/storage capacity and fire/safety concerns. She states that she randomly picked the numbers of the rooms to be searched and directed Defendants Whitehead, Gaither, and MHS Green to conduct the room searches. Winston-Woods states that she remained on the unit to observe the search, the search of Plaintiff's room was conducted in a respectful and appropriate manner, Plaintiff was treated



professionally and with respect during the search of his room, his room was not left in a disarray, none of his property was damaged during the search, and he did not voice any concerns about the search . Winston-Woods Aff., Paras. 3-5, 7-10. Defendant Whitehead states that Plaintiff's room and the rooms of two other residents selected by his supervisors were searched to ensure they were not in possession of any contraband that might compromise the safety of the unit or compromise the treatment of residents on the unit, the search of Plaintiff's room was conducted in the manner that all contraband searches on the SVPTP unit are conducted, Plaintiff's property was not damaged, and Plaintiff did not object to the search or the manner in which it was conducted.  He further states that as a result of a contraband search, some items are left out of place and the mattress is taken off of the bed.  Whitehead states that because of the demands of Defendants' jobs, they are not able to straighten up the residents' rooms following a search, but the rooms are left in a manner such that it is not difficult or unreasonable for the resident to straighten up their room following a search, the residents' mattresses are very light, and it is not a struggle for residents to replace the mattress on the bed.  Whitehead Aff., Paras. 4-8.  Defendant Gaither states that the search of Plaintiff's room was conducted in the same manner that all contraband searches on the SVPTP unit are conducted; Plaintiff's property was not damaged during the search of the room; Plaintiff did not object to the search; Plaintiff did not complain about the search or the manner in which it was conducted before, during, or after the search; Plaintiff did not complain of any medical problems before, during, or after the search; and Plaintiff did not appear to be hurt or in any distress.  See Gaither Aff., Paras. 5-6.

     Plaintiff fails to show that the alleged manner in which the search was conducted gives rise to a cause of action under the Fourteenth Amendment as he has not shown that he has a protected liberty or property interest in the way the search was conducted.  Defendants have articulated

7



relevant state interests for conducting searches and Plaintiff has not shown that Defendants' actions were a substantial departure from accepted professional judgment, practices, or standards.

In his responses, Plaintiff appears to argue that Defendants did not follow SVPTP policies or exceeded their job descriptions. Claims that Defendants did not follow SVPTP policies or procedures do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Plaintiff has also not shown any physical or emotional injury as a result of the alleged incident. Defendants deny that Plaintiff complained of any medical problems before, during, or after the search and state that he did not appear to be hurt or in any distress. Winston-Woods Aff., Para. 10; Gaither Aff., Para. 6; Whitehead Aff., Para. 8. Galen Sanders ("Sanders"), the nurse administrator for the SVPTP, states she reviewed Plaintiff's medical records from before and after the July 2010 search; Plaintiff has a history of hypertension, chest pain, and heart problems that predates the July 2010 search by several years; there is nothing within Plaintiff's medical records indicating Plaintiff's high blood pressure, chest pain, or any problems with his heart were caused by and/or exacerbated by the July 2010 search; there is nothing in Plaintiff's medical records suggesting Plaintiff suffered any physical or mental injury or that any preexisting physical or mental injury was worsened as a result of the search; and there is nothing in Plaintiff's medical records suggesting he ever complained about the search to any of the medical staff on the SVPTP unit. She states that



Plaintiff has not been hospitalized since the July 2010 search; he visited the emergency room on August 20, 2010 because he was experiencing a headache, neck pain, and chest pain after the SVPTP medical hours; he was discharged from the emergency room; and there is nothing in the emergency room records suggesting Plaintiff's August 2010 chest pain was related to the July 2010 search of his room. Sanders Aff., Paras. 5-6

    B.    <u>Equal Protection</u>

Plaintiff alleges that his equal protection rights were violated. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." <u>See</u> <u>Plyler v. Doe</u>, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).

Plaintiff has not asserted that he is a member of a suspect class. He has not shown that he was treated any differently than a similarly-situated SVPTP resident. Further, he has not shown that any alleged mistreatment was the result of intentional or purposeful discrimination.



Plaintiff alleges that Defendants acted in a "racist manner." Complaint at 5. Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

C.      Retaliation

Defendant Winston-Woods, who is the Program Coordinator II within the SVPTP, states that on July 27, 2010 she chose three room numbers of residents of SVPTP at random to have their rooms searched for contraband. She directed S/O Whitehead, PSO Gaither, and MHS Green to conduct the searches of the rooms. Winston-Woods Aff., Para. 7. Defendant Gaither states that he was not involved in choosing Plaintiff's room (or any of the other residents' rooms) to be searched on July 27, 2010, but was directed to search the chosen rooms by his supervisors. He also states he was not aware prior to the filing of this lawsuit that Plaintiff had filed any grievances or complaints of any nature with regard to any of his alleged actions, such that he was not aware of any such grievances or complaints prior to the search of Plaintiff's room on July 27, 2010. Gaither states the search was not taken in retaliation for any actions taken by Plaintiff. Gaither Aff., Paras. 4, 7, 8.

Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. Plaintiff has not shown an adverse action on the exercise of any of his constitutional rights.

To establish a First Amendment § 1983 retaliation claim, a plaintiff must show that: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely



affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000)(citations omitted). For purposes of summary judgment, the undersigned assumes that Plaintiff's use of the SVPTP complaint or grievance process was protected under the First Amendment. Plaintiff has not shown that the alleged retaliatory action adversely affected his protected speech. Further, he fails to show a causal connection between the filing of the complaints and the search of his room. As noted above, Defendants have provided affidavits that the rooms to be searched were picked randomly by Winston-Woods. Gaither denies any knowledge of Plaintiff's complaints prior to the filing of this action.

    D.    Property Claims

Plaintiff may be attempting to allege that Defendants violated his constitutional rights by destroying some of his personal property in the search. Defendants contend that Plaintiff fails to show that such a claim rises to the level of a constitutional violation.

To the extent that Plaintiff is attempting to allege a claim concerning lost property, negligent deprivations of personal property do not support an action for damages under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986). Furthermore, § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney, 489 U.S. at 200-203.

Further, the United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property--even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state. Yates v. Jamison, 782 F.2d 1182, 1183-84 (4th Cir. 1986). Yates has been partially superannuated for cases where

11



plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty."  See Plumer v. Maryland, 915 F.2d 927, 929-32 & nn. 2-5 (4th Cir. 1990); Zinermon v. Burch, 494 U.S. 113 (1990).  Nevertheless, the holding in Yates is still binding on lower federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal property.

Under South Carolina law, Plaintiff's claims may be cognizable under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 et seq.  Section 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment.  Under the SCTCA, a claimant is required to file an administrative claim with the agency, department, or the State Budget and Control Board before seeking judicial relief in a Court of Common Pleas.  See S.C. Code Ann. § 15-78-80.  South Carolina case law indicates that claimants under the SCTCA must strictly comply with its requirements and must timely pursue their claims before the applicable limitations period expires.  See, e.g., Murphy v. Richland Memorial Hosp., 455 S.E.2d 688 (S.C. 1995); Pollard v. County of Florence, 444 S.E.2d 534 (S.C.Ct. App. 1994).

Cases from other circuits point out that the availability of a state cause of action for an alleged loss of property provides adequate procedural due process.  In other words, where state law provides such a remedy, no federally guaranteed constitutional right is implicated.  See King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986); Slaughter v. Anderson, 673 F. Supp. 929, 930 (N.D.Ill. 1987).  Plaintiff has an available judicial remedy for the missing property: the SCTCA.



E. <u>Immunity</u>

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. <u>Id.</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the

13



standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed herein, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

    F.    ADA

Plaintiff alleges that Defendants violated the ADA. Defendants contend that Plaintiff fails to allege how Defendants' actions violated the ADA, has not shown that he has a disability, and has not shown that he was otherwise qualified to receive certain services or was excluded from employment or denied such services within the SVPTP.

14



Plaintiff has not specified what section of the ADA Defendants violated and has only made the conclusory allegation that Defendants violated the ADA. He has alleged no facts to show that he has a "disability" under the ADA and has not shown that he was excluded from employment or denied services on the basis of such disability. See Baird v. Rose, 192 F.3d 462 (4th Cir. 1999)("[T]o establish a violation of the ADA, a plaintiff must show (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability."). Sanders states that there is nothing in Plaintiff's medical records to show he has a physical handicap or disability.

Additionally, Plaintiff's present claims are against individuals only. The Fourth Circuit, in Baird, held that an ADA retaliation claim could not go forward against individual defendants "[b]ecause Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions." Id., at 472. Title II of the ADA provides only for a remedy for discrimination by a "public entity," which does not include individuals. See 42 U.S.C. § 12132; Pathways Psychosocial v. Town of Leonardtown, 133 F . Supp.2d 772 (D.Md.2001).

G.   CRIPA

Plaintiff alleges that Defendants have violated CRIPA. He fails, however, to allege how Defendants violated CRIPA. This Act authorizes the United States Attorney General to conduct investigations and initiate litigation relating to the conditions of confinement at State and local government institutions including institutions "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped." 42 U.S.C. § 1997. It does not, however, create a private right of

15



action. See McRorie v. Shimoda, 795 F.2d 780, 782, n. 3 (9th Cir. 1986); see also Price v. Brittain, 874 F.2d 252, 252-264 (5th Cir. 1989).

    H.    HIPAA

Plaintiff alleges that Defendants' actions violated HIPAA. His conclusory allegation fails to state any facts to show that HIPAA was violated. Further, he fails to state a claim because HIPAA does not provide for a private cause of action against Defendants. See Acara v. Banks, 470 F.3d 569, 571 (5th Cir. 2006)(holding that HIPAA does not create a private right of action); Hopkins v. Bethea, No. 3:06-3467-MBS-JRM, 2007 WL 1231652 at *5 (D.S.C. April 23, 2007)(citing Acara for premise that there is no private right of action under HIPAA); Suggs v. North Strand OB/GYN, P.C., No. 07-3911-TLW-TER, 2009 WL 113445 at *5 (D.S.C. Jan. 14, 2009)(HIPAA provides no private right of action).

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 40) be **granted**. **IT IS ORDERED** that Plaintiff's motion to amend (Doc. 50) his response to Defendants' motion for summary judgment is **granted**.

Joseph R. McCrorey
United States Magistrate Judge

February 23, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).